1

2

3

4

5

6

7

8

9

10

11

12

13

14

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

ROBERTO GUTIERREZ, a single
man,

        Plaintiff,

    v.

THE STATE OF WASHINGTON,
DEPARTMENT OF SOCIAL AND
HEALTH SERVICES,

        Defendant.

NO.  CV-04-3004-RHW

**ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

15

16

17

18

19

20

21

22

23

Before the Court is Defendant's Motion for Summary Judgment (Ct. Rec.
16).  Plaintiff Roberto Gutierrez is suing his employer, Washington Department of
Social and Health Services ("DSHS"), for violations of Title VII, Title VI, and 42
U.S.C. §§ 1983 and 1981.  Specifically, Plaintiff alleges he was discriminated
against in three adverse employment actions (failure to promote, failure to provide
salary increases, intentional restriction of duties and authority) on the basis of his
national origin and in retaliation for making claims of improper governmental
conduct to the Office of Civil Rights ("OCR") of the Department of Health and
Human Services ("HHS").

24

25

26

27

28

Plaintiff was born in the United States, and considers his national origin
Hispanic American and his race as Hispanic.  Defendant concedes that Hispanics
are a protected class under Title VII, and that Plaintiff's claim involves
discrimination on the basis of race, not national origin.  For the reasons outlined
below, the Court grants Defendant's motion for summary judgment on Plaintiff's

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT * 1

claims under 42 U.S.C. §§ 1981 and 1983, on Plaintiff's Title VI employment discrimination claim and Title VI retaliation claim arising out of his involuntary transfer, and on his Title VII discrimination and retaliation claims based on his involuntary transfer and the alleged restriction of duties.  Pursuant to Rule 56(d), the Court preserves for trial judgment on the following issues: Plaintiff's claims of Title VI retaliation based on the failure to promote and restriction of duties, and Plaintiff's Title VII claim arising out of the failure to promote.

## STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial," then the trial court should grant the motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## FACTS

The following facts are undisputed, unless otherwise indicated:

Plaintiff has worked at DSHS for approximately 30 years.  He worked as an affirmative action officer for about three years, and, for the next 14 years he worked as a human resources manager.  In July 2000, Plaintiff was appointed the Yakima/Kittitas Community Service Office Administrator.  Plaintiff was laterally

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT * 2

1 transferred to the position of Deputy Regional Administrator for the DSHS

2 Community Services Division, Region 2, near December 2000.  Plaintiff's salary

3 and benefits were unchanged in his new position, and he claims this transfer was

4 involuntary.

5 **I.    First Alleged Adverse Employment Action: Transfer**

6 This transfer is the first of three alleged adverse employment actions.

7 Plaintiff claims this transfer was in retaliation for his complaints to supervisors that

8 DSHS was not properly administering federal programs for Limited English

9 Proficiency ("LEP") clients.  Plaintiff states that he did not receive a salary

10 increase.  Additionally, Plaintiff asserts that the duties normally associated with the

11 position of Deputy Regional Administrator were not afforded to him.  Defendant

12 maintains that the position is "highly flexible, and the responsibilities are adapted

13 to meet the strengths of the particular deputy in light of the needs of the regional

14 administrator."  (Ct. Rec. 17, ¶ 8.)

15 Plaintiff states that in May 2001 and July 2002 he sent letters to Liz Dunbar,

16 Deputy Secretary of DSHS that, among other things, mentioned his concerns about

17 DSHS's treatment of LEP and Hispanic clients.  On August 6, 2002, Plaintiff filed

18 a complaint with OCR alleging DSHS discrimination against Hispanics and LEP

19 clients and retaliation against him for advocating their rights.  OCR forwarded

20 Plaintiff's complaint to the EEOC in October 2002, but it appears that the EEOC

21 did not make a record of the complaint until the OCR inquired into its status in

22 early June 2003.  There is no evidence that the EEOC investigated this complaint

23 further.

24 **II.    Second Alleged Adverse Employment Action: Failure to Promote**

25 Plaintiff's second claimed adverse employment action is Defendant's failure

26 to promote him to Regional Administrator.  Mr. Gutierrez applied for the position

27 of Regional Administrator for DSHS, Community Services Division, Region 2, in

28 September 2002.  He passed the initial screening processes, and his name and

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT * 3

1  application materials were forwarded to an interview panel, along with those of

2  five other candidates.  After Plaintiff's interview, the interview panel did not

3  include Mr. Gutierrez among those it recommended for the job.  The interview

4  panel had five members: Bobbi Hickox, executive assistant of the Community

5  Services Division; Karl Allison, administrator of the Grant/Adams County

6  Community Service Office; Jesse Garza, director of the Northwest Community

7  Action Center; Billie Hartline, Regional Administrator of Community Services

8  Division Region 6; and Palsy Martin, acting director of the Human Services

9  Division—Yakima Nation.

10  Michael Masten, the Director of the Community Services Division of DSHS,

11  informed Plaintiff that he would not be considered in the final decision-making

12  process by letter on November 21, 2002.  David Rendon, who is also Hispanic, was

13  hired for the position in December 2002.  Plaintiff asserts that Mr. Rendon did not

14  meet the qualifications for the position, and that Plaintiff did not learn that he was

15  less qualified until February 3, 2003.

16  Mr. Gutierrez filed a complaint directly with the EEOC on June 23, 2003.

17  This was 142 days after February 3, 2003, when Plaintiff discovered Mr. Rendon

18  was not qualified for the position of Regional Administrator, and 216 days after

19  Plaintiff received the letter informing him he was no longer under consideration for

20  the position.  The State Fair Employment Practices Agency ("FEPA") sent a notice

21  declining jurisdiction on June 26, 2003.  In his EEOC complaint, Plaintiff claimed

22  that he was denied promotion to Regional Administrator on the basis of national

23  origin and in retaliation for his opposition to unlawful employment practices.  The

24  EEOC issued a right to sue letter to Mr. Gutierrez dated October 15, 2003.  This

25  letter addressed only Plaintiff's failure to promote claim.

26  **III.    Third Alleged Adverse Employment Action: Restriction of Duties**

27  Plaintiff's third alleged adverse employment action is that Defendant

28  intentionally restricted the duties and authority normally granted to a Deputy

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT * 4

1  Regional Director.  On September 27, 2004, Plaintiff received a favorable

2  performance evaluation.  On October 4, 2004, Plaintiff sent an email to Mr.

3  Rendon, his supervisor, complaining of his managerial practices and of the high

4  turnover of Hispanic staff.  Mr. Gutierrez wrote about his "concerns" and

5  "problems" with Mr. Rendon's directions to staff, including staff under Plaintiff's

6  direct supervision, and various training needs.  Plaintiff also expressed concern that

7  some of Mr. Rendon's decisions were in violation of rules or department policies.

8         In his emailed response, Mr. Rendon declared that he found Plaintiff's email

9  to be "accusatory and threatening," leading him to "seriously question [Plaintiff's]

10  judgment and erod[ing] [his] level of trust with [Plaintiff]."  Mr. Rendon gave three

11  directives to Plaintiff in this email:

12         1.  I am directing you to forward all client complaints received by you
        or your staff to Ron or Joanne for processing.
13         2.  I am directing you to refer all staff complaints to their chain of
        command, personnel, or if they wish to discuss the issue with someone in
14        Region, to me.
        3.  I am directing you to not involve yourself in personnel issues that
15        are not in your chain of command.

16  (Ct. Rec. 18, at 10).  Mr. Rendon further limited Plaintiff's duties in an October 19,

17  2004 email:

18         I've decided to take over the supervisory responsibility of all staff that
        currently report to you.  I am doing this because I want to deal with differing
19        perceptions of flexibility and team work in the delivery of region office
        services.  I think I can best address these issues by establishing a closer
20        working relationship with staff as their direct supervisor.  This change is
        effective immediately.
21
22  (Id. at 9).  Plaintiff claims that this action was taken in retaliation for filing his

23  complaint with the EEOC three and one half months earlier.

24         Mr. Rendon returned duties and responsibilities to Plaintiff by letter dated

25  November 15, 2004, except for supervision of the training staff.  Defendant

26  contends that, in Mr. Rendon's opinion, he and Plaintiff "saw the role of regional

27  training staff differently.  In Mr. Rendon's opinion, Mr. Gutierrez had been

28  inflexible and had been dictating to the other community service office

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT * 5

1 administrators what training will be provided to their staff."  Mr. Rendon also

2 believed that the high rate of turnover for Hispanic employees was explained by

3 legitimate, non-discriminatory reasons.

4       Lastly, Plaintiff alleges that he has been the subject of "a spurious

5 whistleblower allegation which he claims is in direct retaliation for having filed

6 this lawsuit."  This assertion does not appear in Plaintiff's complaint, so it is not

7 properly before the Court and will not be discussed here.

8 **DISCUSSION**

9 **I.      Plaintiff's § 1983 Claim**

10       Mr. Gutierrez asserts a violation of his civil rights under 42 U.S.C. § 1983.[1]

11 "One of the requisite elements for stating a claim under § 1983 is that the violation

12 [of civil rights] was committed by a 'person' acting under color of state law."

13 *Cortez v. Los Angeles*, 294 F.3d 1186, 1188 (9th Cir. 2002) (citing *Will v. Dep't of*

14 *State Police*, 491 U.S. 58, 71 (1989)).  States, state agencies, and state officials

15 sued in their official capacity "are not considered 'persons' within the meaning of

16 § 1983, due to the sovereign immunity generally afforded states by the Eleventh

17 Amendment."  *Id*.  Here, Plaintiff chose to sue only the DSHS, a Washington state

18 agency, so the Court dismisses his § 1983 claim.

19 **II.    Plaintiff's § 1981 Claim**

20       Plaintiff claims that Defendant has violated 42 U.S.C. § 1981.  Section 1981

21 provides that "all persons," regardless of race or ethnicity, "shall have the same

22 right . . . to make and enforce contracts . . . ."  42 U.S.C. § 1981(a).  In *Judie v.*

23 *Hamilton*, the Ninth Circuit explained that in Washington, "the terms of public

24 employment, other than pension rights, do not create contractual expectancies.

25 Rather, they are part of a system of personnel administration."  872 F.2d 919, 923

26

27      [1] Plaintiff's complaint refers to "20 U.S.C. § 1983," but the Court interprets

28 this as a claim under 42 U.S.C. § 1983 due to the reference to "color of law."

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT * 6

1  (9th Cir. 1989) (citing *Wash. Fed'n of State Employees v. State*, 101 Wash. 2d 536,

2  682 P.2d 869, 872 (1984)).  However, *Judie* involved a claim invoking contractual

3  rights from a job description, whereas Mr. Gutierrez is making a claim of denial of

4  promotion.  In an unpublished opinion, the Ninth Circuit has held that *Judie* "does

5  not suggest that a promotion claim brought by a civil service employee should be

6  barred by the statutory nature of his employment," and that state employees may

7  invoke the protections of § 1981 for denial of promotion claims.  *Ramirez v.*

8  *Kroonen*, 44 Fed. Appx. 212, 218-19 (9th Cir. 2002).

9       Nevertheless, Mr. Gutierrez's § 1981 claim should be dismissed for the same

10  reason he cannot state a claim under § 1983: Actions against the state or state

11  agencies under § 1981 are barred by the Eleventh Amendment.  *See Fed'n of*

12  *African Am. Contractors v. Oakland*, 96 F.3d 1204, 1215 (9th Cir. 1996) (holding

13  that § 1981 suits are permissible against municipalities if the injury was the result

14  of a "policy or custom," similar to § 1983 claims, but not contemplating the issue

15  whether a § 1981 action could be brought against a state); *Pittman v. Oregon*, 2005

16  WL 1899379, at *4 (D. Or. Aug. 8, 2005) (holding that allowing suit under § 1981

17  against the state would impose "a substantive change on federal civil rights law"

18  and that "§ 1981(c) does not contain clear or unmistakable language that reflects

19  Congress 'faced, and intended to bring into issue' a plaintiff's right to bring an

20  action against the state under § 1981").  Because Plaintiff sued only DSHS, a state

21  agency, Mr. Gutierrez's § 1981 claim is dismissed.

22  **III.    Plaintiff's Title VI Claim**

23       **A.     Employment Discrimination under Title VI**

24       Mr. Gutierrez also claims that Defendant's conduct was a violation Title VI

25  of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000d.  Title VI states, in

26  pertinent part:  "No person . . . shall, on the ground of race, color, or national

27  origin, be excluded from participation in, be denied the benefits of, or be subjected

28  to discrimination under any program or activity receiving Federal financial

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT * 7

1 assistance." 42 U.S.C. § 2000d.  Plaintiff's allegations that he suffered

2 employment discrimination do not state a claim under Title VI, for Title VI only

3 prohibits employment discrimination in programs "where a primary objective of

4 the Federal financial assistance is to provide employment."  42 U.S.C. § 2000d-3;

5 *see Temengil v. Trust Territory of Pac. Islands*, 881 F.2d 647, 653 (9th Cir. 1989);

6 *see also Johnson v. Transp. Agency,* 480 U.S. 616, 628 n.6 (1987) (commenting

7 that Title VI was not intended to impinge on Title VII).  The DSHS does not fall

8 into this category.

9        **B.        Retaliation Claims under Title VI**

10       In spite of Defendant's assertion to the contrary, retaliation claims are

11 recognized under Title VI.  In March of this year, the Supreme Court considered

12 whether there was an implied cause of action under Title IX for retaliation.

13 *Jackson v. Birmingham Bd. of Educ.*, — U.S. —, —, 125 S. Ct. 1497 (2005).  The

14 language of Title IX was patterned after that in Title VI, and the Supreme Court

15 has interpreted the two consistently.  *Cannon v. Univ. of Chicago*, 441 U.S. 677,

16 694-99 (1979) (reasoning that a finding based on the statutory language of Title VI

17 should logically extend to Title IX).  Therefore, the holding in *Jackson* based on

18 Title IX applies to claims under Title VI as well.  The Supreme Court in *Jackson*

19 held:

20       Retaliation against a person because that person has complained of sex
         discrimination is another form of intentional sex discrimination
21       encompassed by Title IX's private cause of action.  Retaliation is, by
         definition, an intentional act.  It is a form of "discrimination" because the
22       complainant is being subjected to differential treatment.  Moreover,
         retaliation is discrimination "on the basis of sex" because it is an intentional
23       response to the nature of the complaint: an allegation of sex discrimination.
         We conclude that when a funding recipient retaliates against a person
24       *because* he complains of sex discrimination, this constitutes intentional
         "discrimination" "on the basis of sex," in violation of Title IX.

25

26 *Jackson*, 125 S. Ct. at 1504.

27

28

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT * 8

1

### 1.    Title VI Statute of Limitation

2    Before examining the merits of Mr. Gutierrez's Title VI claim, the Court

3 must determine whether his claim is barred by the statute of limitation.  Claims

4 brought under Title VI "are governed by the same state statute of limitations period

5 applicable to claims brought under § 1983." *Taylor v. Regents of Univ. of Cal.*,

6 993 F.2d 710, 713 (9th Cir. 1993).  The state personal injury statute of limitation

7 governs § 1983 claims.  *Id*. at 711 (citing *Wilson v. Garcia*, 471 U.S. 261, 275

8 (1985)).  In Washington, the personal injury statute of limitation and, thus, the

9 statute of limitation for § 1983 and Title VI actions, is three years.  *Hayes v.*

10 *Seattle*, 76 Wash. App. 877, 880, 888 P.2d 1227, 1229 (1995).  Mr. Gutierrez filed

11 this complaint on January 8, 2004, and his first alleged adverse employment action,

12 involuntary transfer, took place between September 2000 and December 1, 2000.

13 A Title VI claim based on this action would, therefore, be time-barred.  However,

14 Plaintiff's other retaliation claims, based on the adverse employment actions that

15 allegedly occurred in 2003 and 2004, are properly before the Court.

16

### 2.    Plaintiff's Title VI Retaliation Claim

17    To establish a prima facie case of retaliation, a plaintiff must show that (1)

18 he engaged in a protected activity; (2) his employer subjected him to an adverse

19 employment action; and (3) a causal link exists between the protected activity and

20 the adverse action.[2]  *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000);

21 *Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71, 84 (D.D.C. 2003) (applying

22 this analysis to a retaliation claim under Title VI).  If Plaintiff meets his burden in

23 asserting a prima facie retaliation claim, the burden shifts to Defendant to articulate

24 a legitimate nondiscriminatory reason for its decision.  *Ray*, 217 F.3d at 1240.  If

25 Defendant articulates such a reason, Plaintiff bears the ultimate burden of

26

27        [2] For the analysis of Plaintiff's Title VI retaliation claim, the Court

28 extrapolates and applies requirements for a retaliation claim under Title VII.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT * 9

1  demonstrating that the reason was merely a pretext for a discriminatory motive. *Id.*

2  When adverse employment decisions closely follow complaints of discrimination,

3  retaliatory intent may be inferred. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d

4  1054, 1065 (9th Cir. 2002) (holding that the causal link between a protected

5  activity and the alleged retaliatory action "can be inferred from timing alone" when

6  there is a close proximity between the two); *Bell v. Clackamas County*, 341 F.3d

7  858, 865-66 (9th Cir. 2003) (holding that proximity in time may, by itself,

8  constitute circumstantial evidence of retaliation).

9             **i.    Prima Facie Case**

10            To establish the first element of a prima facie case of retaliation, Mr.

11 Gutierrez need only show that he had a "reasonable belief" that the practice

12 opposed was unlawful under Title VI. *Trent v. Valley Elec. Ass'n*, 41 F.3d 524,

13 526 (9th Cir. 1994); *Chandamuri*, 274 F. Supp. 2d at 84.  Plaintiff's

14 correspondence with Ms. Dunbar regarding DSHS's treatment of Hispanic and

15 LEP clients, his complaint to the OCR, and his emails to Mr. Rendon clearly

16 illustrate he held a "reasonable belief" that Defendant was violating Title VI.

17            Next, the Court must consider whether the denial of a promotion and

18 temporary limitation of duties were adverse employment actions.  Under Ninth

19 Circuit case law, an employment action qualifies as adverse "if it is reasonably

20 likely to deter employees from engaging in protected activity." *Ray*, 217 F.3d at

21 1243.  Denial of a promotion certainly falls under this definition, but a temporary

22 limitation of duties may not.  The Ninth Circuit has held that transfers of job

23 duties, if proven, could constitute adverse employment decisions. *Yartzoff v.*

24 *Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).  But in a more recent, unpublished

25 opinion, the circuit court held that a temporary loss of duties, for a period of less

26 than three months, was not an adverse employment action. *Toy v. San Francisco*,

27 221 F.3d 1349, 2000 WL 658039, at *1 (9th Cir. 2000).  Mr. Gutierrez alleges a

28 loss of duties for a period of approximately one and one half months—they were

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT * 10

1  taken away in emails dated October 5 and October 19, 2004, and, according to

2  Defendant, returned in a letter from Mr. Rendon dated November 15, 2004.  The

3  question whether Defendant's action amounted to an adverse employment action is

4  material, and there appears to be a genuine issue of fact.  While contemplating a

5  motion for summary judgment, the Court should accept Plaintiff's facts as true and

6  draw justifiable inferences.  Therefore, the Court assumes Plaintiff has satisfied

7  this element of his prima facie case at this stage of the proceedings.

8         The final element of a prima facie case of retaliation is causation.  Causation

9  "may be inferred from proximity in time between the protected action and the

10  allegedly retaliatory employment decision." *Ray*, 217 F.3d at 1244; *see also Clark*

11  *County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (indicating that where

12  "mere temporal proximity" is the only evidence of causation, the proximity must

13  be "very close").  Mr. Gutierrez's promotion denial occurred one and one half

14  years after his first letter to Ms. Dunbar, four months after his second letter to her,

15  and three months after he filed a complaint with the OCR.  The reduction of

16  Plaintiff's responsibilities came days after his emailed complaint to Mr. Rendon.

17  Thus, both satisfy the temporal proximity test.  Although Defendant urges that

18  there is no evidence that the interview panel knew of Plaintiff's complaints,

19  Plaintiff has raised a genuine issue of material fact by illustrating the close

20  proximity of the protected activity and the alleged retaliatory acts.  Therefore, Mr.

21  Gutierrez has established a prima facie case of retaliation under Title VI for the

22  adverse employment acts of promotion denial and restriction of duties.

23                        **ii.      Burden Shifting**

24         However, the inquiry does not end here.  Defendant may now introduce

25  legitimate, nonretaliatory reason for its adverse employment decisions.  *Yartzoff*,

26  809 F.2d at 1376.  "The employer need not persuade the court that it was actually

27  motivated by the proffered reasons: 'It is sufficient if the defendant's evidence

28  raises a genuine issue of fact as to whether it discriminated against the plaintiff.'"

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT * 11

1   *Id.* (citation omitted).  Here, DSHS states that Mr. Rendon and Mr. Gutierrez's

2   names were both forwarded to the interview panel for consideration for the

3   position of Regional Administrator, and that the panel did not include Mr.

4   Gutierrez among its top recommended candidates.  The panel's decision to reject

5   Mr. Gutierrez, who was one of 30 candidates for the job, after an in-person

6   interview, is a legitimate, non-retaliatory reason.  Defendant's explanation for its

7   decision to temporarily restrict Plaintiff's duties and responsibilities is Mr.

8   Rendon's eroded trust in Plaintiff and their difference in opinion of the role of

9   regional training staff.  This also satisfies Defendant's burden of production.

10      What remains is a determination of whether Mr. Gutierrez has produced

11  sufficient evidence supporting his allegation that the non-retaliatory reasons

12  proffered by DSHS are pretexts.  *Id.* at 1377.  In the Title VII context, the Ninth

13  Circuit "has observed that a grant of summary judgment, though appropriate when

14  evidence of discriminatory intent is totally lacking, is generally unsuitable in Title

15  VII cases in which the plaintiff has established a prima facie case because of the

16  'elusive factual question' of intentional discrimination."  *Id.* (citations omitted).

17  The same reasoning applies to retaliation claims under Title VI.  Withholding

18  judgment on the ultimate merit of his Title VI claims, Mr. Gutierrez's

19  establishment of a prima facie case of retaliation for protected Title VI activities

20  raises a genuine issue of material fact, making summary judgment dismissal

21  inappropriate.

22  **IV.    Plaintiff's Title VII Claim**

23      Title VII of the Civil Rights Act of 1964 provides, in relevant part, that "[i]t

24  shall be an unlawful employment practice for an employer . . . to discriminate

25  against any individual with respect to his compensation, terms, conditions, or

26  privileges of employment, because of such individual's race, color, religion, sex, or

27  national origin." 42 U.S.C. § 2000e-2(a)(1).  In his complaint, Plaintiff alleges that

28  he was discriminated against on the basis of race and that he was retaliated against

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT * 12

1   for complaining of discrimination on the basis of race, in violation of Title VII.

2   **A.    Exhaustion of Administrative Remedies**

3   To establish federal subject matter jurisdiction over Title VII claims, a

4   plaintiff is required to exhaust his administrative remedies before filing a

5   complaint. *Lyons v. England*, 307 F.3d 1092, 1103-04 (9th Cir. 2002).  Defendant

6   asserts that Plaintiff failed to meet the exhaustion prerequisites for filing a claim of

7   discrimination under Title VII.  Under 42 U.S.C. § 2000e-5, plaintiffs cannot seek

8   relief under 42 U.S.C. § 2000e-5(a) until they have filed a claim with the state or

9   local authority[3] and 60 days have passed, unless such proceedings have been earlier

10  terminated.  Moreover, all charges must be filed with the EEOC within 300 days

11  after the alleged unlawful employment practice occurred.  In *Mohasco Corp. v.*

12  *Silver*, the Supreme Court held that the practical effect of the above provisions is,

13  in states with fair employment practices agencies over one year old, to render

14  untimely any charge originally filed with the EEOC more than 240 days after the

15  act complained of (since the remaining 60 days is needed to provide the state

16  authority with an opportunity to adjudicate the charges), unless the state agency

17  actually disposes of the referred charge before a total of 300 days has elapsed.  447

18  U.S. 807, 814 n.16 (1980).

19  Plaintiff did not file a charge with the EEOC regarding the first alleged

20  adverse employment action, his involuntary transfer.  Mr. Gutierrez states he sent a

21  letter to the OCR alleging retaliation on August 6, 2002, but this was well over 300

22  days after he was officially appointed Deputy Regional Administrator on

23  December 1, 2000.  Therefore, had the EEOC investigated Plaintiff's charge and it

24

25  [3] In Washington State, the Washington State Human Rights Commission

26  has authority to grant relief from unlawful employment practices and is a

27  qualifying "state or local authority" under 42 U.S.C. § 2000e-5(c), and is more

28  than one year old. *See* Wash. Stat. Ann. § 49.60 *et seq.*; and *National R.R.*
    *Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT * 13

1  related back to his original filing with the OCR, Plaintiff's Title VII claim for the

2  involuntary transfer still would be time-barred.

3      Plaintiff filed a complaint with the EEOC that covers his second claim,

4  denial of promotion, on June 25, 2003.  The Washington State Human Rights

5  Commission signed a notice declining jurisdiction on June 26, 2003, thereby

6  actually disposing of Plaintiff's charge.  Because the state agency disposed of

7  Plaintiff's complaint, the 300-day time limit applies.  Plaintiff satisfied this

8  requirement whether the Court counts from February 3, 2003, as Plaintiff asserts it

9  should, or from November 21, 2002, as Defendant does.  Plaintiff received a right

10  to sue letter from the EEOC on October 15, 2003, and then had 90 days in which to

11  initiate suit against Defendant.  *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S.

12  147, 149 (1984).  Mr. Gutierrez filed his complaint with this Court on January 8,

13  2004, 85 days later.  Plaintiff satisfied the exhaustion requirements for his denial of

14  promotion claim under Title VII.

15      Plaintiff did not file another EEOC complaint for his third claim of

16  retaliation, which occurred in October 2003.  The Court has subject matter

17  jurisdiction over all claims that fall within the scope of the EEOC's actual

18  investigation or an EEOC investigation "that could reasonably be expected to grow

19  out of the charge."  *Vasquez v. County of Los Angeles*, 349 F.3d 634, 644 (9th Cir.

20  2004).  Mr. Gutierrez's EEOC complaint only claimed retaliation and

21  discrimination for the denial of promotion, so the Court must determine whether

22  his claim of restriction of duties and responsibilities is reasonably related to his

23  EEOC charge.  In doing so, the Court may consider several factors: "the alleged

24  basis of the discrimination, dates of discriminatory acts specified within the charge,

25  [and] perpetrators of discrimination named in the charge . . . ."  *Id*.

26      Plaintiff alleged in his EEOC complaint that "[o]n or about February 3,

27  2003, I was denied promotion," and that he was "highly qualified" for the position

28  (Ct. Rec. 18, at 7).  He declared that he was discriminated against because of his

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT * 14

1  national origin and in retaliation for his opposition to employment practices "made

2  unlawful by Title VII." Id.  Based on this charge, the EEOC would have no reason

3  to investigate Mr. Rendon, the successful candidate for the promotion Plaintiff was

4  denied.  The restrictions Mr. Rendon placed on Plaintiff's duties are unrelated to

5  his denial of promotion.  Additionally, the restrictions took place

6  contemporaneously with the EEOC's issuance of a right to sue letter, after its

7  investigation was complete.  Because the operative facts regarding Plaintiff's claim

8  of limitation of duties are not related to the facts in his EEOC charge, Mr.

9  Gutierrez did not exhaust his administrative remedies for his third claim.  *Vasquez*,

10 349 F.3d at 645.  Therefore, the Court has no jurisdiction to hear Plaintiff's claim

11 that Defendant retaliated against him by restricting his duties and responsibilities.

12     Plaintiff has failed to exhaust his administrative remedies for his first and

13 third Title VII claims, so these are not properly before the Court.[4]  Plaintiff's

14

15

16 _____

     [4] In his response brief, Plaintiff raises for the first time a "hostile work

17 environment" claim: "Plaintiff asserts that he has had a retaliatory cloud over him

18 at all times since he voiced his concerns regarding violation of the DSHS's own

   requirements to be Title VII compliant in the year 2000." (Ct. Rec. 25, at 15).

19 However, in the case cited by Plaintiff, the Supreme Court explained "[d]iscrete

20 acts such as termination, failure to promote, denial of transfer, or refusal to hire are

21 easy to identify.  Each incident of discrimination and each retaliatory adverse

22 employment decision constitutes a separate actionable 'unlawful employment

23 practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

24 Hostile work environment claims, on the other hand, involve "repeated conduct"

25 and arise "[w]hen the workplace is permeated with discriminatory intimidation,

26 ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of

27 the victim's employment and create an abusive working environment." *Id*. at 115-

28 16.  Clearly, Plaintiff's allegations involve discrete acts, and not a hostile work

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT * 15

1  second claim of discrimination and retaliation, involving the denial of promotion,

2  is considered below.

### B.   Merits of Plaintiff's Title VII Denial of Promotion Claim

### 1.   Plaintiff's Title VII Discrimination Claim

5       In order to prevail in his racial discrimination claim, Plaintiff must establish

6  a prima facie case of discrimination.  *Vasquez*, 349 F.3d at 638.  To do so, Plaintiff

7  must offer evidence that gives rise to an inference of unlawful discrimination,

8  either through the framework set forth in *McDonnell Douglas Corp. v. Green*, 411

9  U.S. 792 (1973), or with direct or circumstantial evidence of discriminatory intent.

10 *Id.*  Under the *McDonnell Douglas* framework, unlawful discrimination is

11 presumed if the plaintiff can show that "(1) she belongs to a protected class, (2) she

12 was performing according to her employer's legitimate expectations, (3) she

13 suffered an adverse employment action, and (4) other employees with

14 qualifications similar to her own were treated more favorably."  *Godwin v. Hunt*

15 *Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (citing *McDonnell Douglas*

16 *Corp.*, 411 U.S. at 802).  Direct evidence is "evidence which, if believed, proves

17 the fact [of discriminatory animus] without inference or presumption."  Id. at 1221

18 (alteration in original).

19      If Plaintiff succeeds in establishing a prima facie case, then the burden shifts

20 to Defendant to articulate a legitimate, nondiscriminatory reason for its allegedly

21 discriminatory conduct.  *Vasquez*, 349 F.3d at 638.  If Defendant provides such a

22 reason, the burden shifts back to Plaintiff to show that Defendant's reason is a

23 pretext for discrimination.  *Id.*  Plaintiff can show pretext directly by showing that

24 discrimination more likely motivated Defendant, or indirectly, by showing that the

25 Defendant's explanation is unworthy of credence.  *Vasquez*, 349 F.3d at 641.

26      Mr. Gutierrez claims that he was not hired as Regional Administrator

27 because he is Hispanic.  The successful candidate for the position is also Hispanic,

28

environment.
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT * 16

1  but this does not mean Plaintiff cannot state a claim of discrimination. *Olmstead v.*

2  *L.C. ex rel. Zimring*, 527 U.S. 581, 598 n.10 (1999) (stating that one can prove

3  discrimination by demonstrating that "one member of a particular protected group

4  has been favored over another member of that same group").  It appears Mr.

5  Gutierrez has established a prima facie case of discrimination on the basis of race:

6  (1) He is Hispanic; (2) he was performing according to DSHS's legitimate

7  expectations, (3) he suffered an adverse employment action (see analysis above),

8  and (4) other employees with qualifications similar to his own were treated more

9  favorably.  Defendant contends Mr. Gutierrez was not chosen as Regional

10  Administrator after a lengthy selection process by an impartial interview panel.  To

11  avoid summary judgment, Plaintiff must show that this reason is a pretext for

12  discrimination.

13       As evidence of pretext, Mr. Gutierrez asserts that Mr. Rendon was not

14  qualified for the position of Regional Administrator.  This is a question of fact,

15  and, because it goes to establishing pretext, it is material.  Although the parties

16  have provided Mr. Rendon's application materials, whether Mr. Rendon was

17  qualified for the Regional Administrator position is not properly resolved by this

18  Court.  Therefore, summary judgment on Plaintiff's Title VII discrimination claim

19  is not appropriate.

20              **2.      Plaintiff's Title VII Retaliation Claim**

21       Title VII prohibits employers from discriminating against an employee

22  because that employee "has opposed any practice made an unlawful employment

23  practice by this subchapter, or because he has made a charge, testified, assisted, or

24  participated in any manner in an investigation, proceeding, or hearing under this

25  subchapter." 42 U.S.C. § 2000e-3(a).  To establish a prima facie case of retaliation,

26  an employee must show that (1) he engaged in a protected activity; (2) his

27  employer subjected him to an adverse employment action; and (3) a causal link

28

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT * 17

1   exists between the protected activity and the adverse action.  *Ray*, 217 F.3d at

2   1240.

3       If Plaintiff meets his burden in asserting a prima facie retaliation claim, the

4   burden shifts to Defendant to articulate a legitimate nondiscriminatory reason for

5   its decision.  *Id.*  If Defendant articulates such a reason, Plaintiff bears the ultimate

6   burden of demonstrating that the reason was merely a pretext for a discriminatory

7   motive.  *Id.*  When adverse employment decisions closely follow complaints of

8   discrimination, retaliatory intent may be inferred.  *Villiarimo*, 281 F.3d at 1065

9   (holding that the causal link between a protected activity and the alleged retaliatory

10  action "can be inferred from timing alone" when there is a close proximity between

11  the two); *Bell*, 341 F.3d at 865-66 (holding that proximity in time may, by itself,

12  constitute circumstantial evidence of retaliation).  Making an informal complaint to

13  a supervisor, as well as making a formal complaint with the EEOC, are protected

14  activities.  *Ray*, 217 F.3d at 1240 n.3.

15      Mr. Gutierrez's letters to Liz Dunbar and to the OCR, in which he reported

16  Title VII violations, qualify as protected activities.  As discussed above, the denial

17  of promotion was an adverse employment action, and the temporal proximity of

18  the two events establishes causation.  Thus, Plaintiff has established a prima facie

19  case of retaliation.  As shown in the Title VI retaliation claim discussion and the

20  Title VII discrimination discussion, a genuine issue of material fact exists as to

21  whether Defendant's reasons for denying promotion were pretext, so summary

22  judgment is not appropriate for Plaintiff's retaliation claim under Title VII, either.

23      Accordingly, for the reasons stated above, **IT IS HEREBY ORDERED:**

24      1. Defendant's Motion for Summary Judgment (Ct. Rec. 16) is **GRANTED**

25  as to Plaintiff's §§ 1981 and 1983 claims; Plaintiff's Title VI employment

26  discrimination claim; Plaintiff's Title VI retaliation claim arising out of his alleged

27  involuntary transfer; and Plaintiff's Title VII discrimination and retaliation claims

28  arising out of his alleged involuntary transfer and restriction of duties.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT * 18

1    2.  Defendant's Motion for Summary Judgment (Ct. Rec. 16) is **DENIED** as

2  to Plaintiff's Title VI retaliation claims arising out of the failure to promote and

3  restriction of duties; and Plaintiff's Title VII discrimination and retaliation claims

4  arising out of the failure to promote.

5    **IT IS SO ORDERED.**  The District Court Executive is directed to enter this

6  Order and forward copies to counsel.

7    **DATED** this 26th day of September, 2005.

8

9                      s/ ROBERT H. WHALEY
                  CHIEF UNITED STATES DISTRICT JUDGE

10

11

12

13

14  Q:\CIVIL\2004\Gutierrez\Gutierrez.sj.ord.wpd

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT * 19